UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------x
                              :
In re: Teligent Services,     :
Inc., et al.,                 :
                              :
            Debtors.          :
                              :
SAVAGE & ASSOCIATES,          :
P.C.,                         :
                              :
            Appellant,        :
                              :        06 Civ. 03721 (KMW)
            v.                :        Opinion & Order
                              :
COUNTY OF FAIRFAX,            :
VIRGINIA,                     :
                              :
            Appellee.         :
                              :
------------------------------x

WOOD, U.S.D.J.:

        Appellant Savage & Associates, P.C. ("Savage"), the

Unsecured Claims Estate Representative of Teligent, Inc. and its

subsidiaries (collectively "Teligent"), appeals the post-trial

decision of the United States Bankruptcy Court for the Southern

District of New York, dismissing Savage's preference action

against the County of Fairfax, Virginia ("Fairfax County").

Savage initiated the action, pursuant to 11 U.S.C. § 547(b) ("§

547(b)"), to recover two property tax payments made by Teligent

to Fairfax County in the preference period prior to Teligent's

May 2001 bankruptcy filing.

        In dismissing the action, the Bankruptcy Court found that

Fairfax County had acquired a lien on Teligent's property upon assessment of the taxes.  The Bankruptcy Court accordingly concluded that Teligent's payments to Fairfax County were on account of a secured debt, and were not preferential.

On appeal, Savage argues that the Bankruptcy Court erred in finding that the taxes constituted a secured debt.  Savage maintains, pursuant to Virginia law, that Fairfax County would not have acquired a lien on Teligent's property upon assessment of the taxes; rather, Fairfax County would have had "to distrain"[1] Teligent's property in order for a lien to attach. Savage contends that Fairfax County never distrained Teligent's property, and that the payments made to Fairfax County were on account of an unsecured debt.  Accordingly, Savage argues that the payments were preferential.

For the reasons stated below, the Court agrees with the Bankruptcy Court that Fairfax County acquired a lien on Teligent's property upon assessment of the taxes.  The taxes therefore constituted a secured debt, payment of which was <u>not</u>

_____

[1] To distrain is to seize goods by distress.  Distress is "the taking, either with legal process, or extra-judicially subject to the performance of some necessary condition precedent, by a private individual or by an officer of the court, of a personal chattel, out of the possession of a wrongdoer or defaulter and into the custody of the law to be impounded as a pledge in order to bring pressure to bear upon the owner of the chattel to redress an injury, to perform a duty, or to satisfy a lawful demand." <u>Black's Law Dictionary</u> (8th ed. 2004) (internal citations omitted).

preferential, pursuant to § 547(b).  The Court AFFIRMS the
decision of the Bankruptcy Court.

I.   Factual and Procedural Background

    A.   Teligent

Teligent is a corporation involved in the provision of
telecommunication services.  During the time period relevant to
this case, Teligent maintained its corporate headquarters in
Fairfax County, Virginia, and operated as a Virginia public
service corporation ("PSC").  Each year, Teligent was required to
pay PSC taxes to Fairfax County on its real estate and personal
property located in Fairfax County.

    B.   The Virginia Tax Scheme and PSC Taxes

        1.   Property Taxes Generally

Pursuant to article 10 of the Virginia Constitution, all
property located in Virginia, unless explicitly excluded, is
subject to taxation.  VA. CONST. art. 10, § 1.  For most business
taxpayers, property taxes are assessed by the respective locality
in which the property is located.  See VA. CODE ANN. § 58.1-3000
et seq. (2009).  These businesses pay one tax rate on their real
estate, and another, usually higher, tax rate on their personal
property.  Compare http://www.fairfaxcounty.gov/dta (follow "Real
Estate Tax Rate" hyperlink) with
http://www.fairfaxcounty.gov/dta/business_personalproperty.htm.

        2.   PSC Taxes

PSCs are taxed differently on their property than other business taxpayers.  First, PSC taxes are assessed not by the respective locality, but by a state agency, the State Corporation Commission.  VA. CODE ANN. § 58.1-2600 (2009).  Second, PSCs pay the lower real estate tax rate on both their real estate and personal property.  See VA. CODE ANN. § 58.1-2606 (2009).

PSC taxes, like other property taxes, are computed once a year, and deemed assessed on January 1 of that year.  See VA. CODE ANN. § 58.1-1 (2009).

C.  Teligent's 2000 PSC Taxes

Savage brings this preference action to recover two PSC personal property tax[2] payments made by Teligent to Fairfax County during the preference period prior to Teligent's bankruptcy filing in May 2001.[3]  The details of the two payments are described below.[4]

---

[2] As noted above, PSC taxes are assessed on both a PSC's real estate and personal property.  The taxes at issue here, however, were assessed solely on Teligent's personal property.

[3] Savage originally sought to recover a third payment made by Teligent to Fairfax County during the preference period for certain Business Professional Occupational License taxes.  Savage withdrew this claim at the conclusion of trial, and this payment is not at issue on appeal.  (Trial Tr. 156-57.)

[4] The parties' depictions of Teligent's payments in their briefs on appeal differ not only from each other's, but also, at times, from the Bankruptcy Court's.  Neither party, however, contests the Bankruptcy Court's findings of fact as to the details of these payments.  Accordingly, the Court accepts as uncontested the Bankruptcy Court's account of the payments.

4

In January 2000, the Virginia State Corporation Commission assessed the value of Teligent's personal property in Fairfax County as $22,876,239.  The applicable tax rate in Fairfax County at that time was 1.23%.  Teligent's PSC personal property taxes for 2000 thus totaled $281,377.74.

On or around October 25, 2000, Fairfax County billed Teligent for its 2000 PSC personal property taxes, in the amount of $281,377.74.  The bill stated that Teligent's payment was due by February 15, 2001.

Teligent did not submit payment by February 15, 2001.  Fairfax County assessed late penalties and interest against Teligent in the amount of $30,056.77.

By check dated February 27, 2001, Teligent sent Fairfax County a payment for $281,377.74, the original amount of the taxes.  Fairfax County received Teligent's check on March 15, 2001.

As required by statute, Fairfax County first applied Teligent's payment to interest, next to penalties, and finally to the taxes.  This allotment of funds left $30,056.77 of the taxes unpaid.  Teligent paid the remaining amount due by a separate check, dated April 9, 2001.

Savage seeks to recover in this action the two payments made by Teligent to Fairfax County, for a total of $311,434.51.

D.   Filing for Bankruptcy

On May 21, 2001, less than ninety days after Teligent made its first payment to Fairfax County, Teligent filed for chapter 11 bankruptcy.

On September 6, 2002, the Bankruptcy Court confirmed the Debtors' Third Amended Plan of Reorganization, pursuant to which Savage was appointed the Unsecured Claims Estate Representative of Teligent, Inc., vested with the right to, <u>inter alia</u>, pursue preference actions.

     E.  <u>Proceedings Before the Bankruptcy Court</u>

On April 21, 2003, Savage initiated this action before the Bankruptcy Court.  Fairfax County filed a motion to dismiss on sovereign immunity grounds, which the Bankruptcy Court denied.

The case eventually preceded to trial in front of Chief Bankruptcy Judge Stuart M. Bernstein.  At trial, Fairfax County argued that the payments from Teligent were on account of a secured debt, and not preferential.  Specifically, Fairfax County argued, pursuant to the section of the Virginia Code directly addressing PSC tax liens, § 58.1-2612 ("§ 2612"), that Fairfax County acquired a lien on Teligent's personal property upon assessment of the taxes.

In response, Savage argued, <u>inter alia</u>, that the language of § 2612 should not be read in isolation, and that other sections in the Virginia Code made clear that liens for personal property taxes do not arise automatically, but require the taxing

authority to first distrain the taxed property.

In making this argument, Savage relied on the decision of the Bankruptcy Court for the Western District of Virginia in <u>City of Martinsville v. Tultex Corp. ("In re Tultex Corp.")</u>, 250 B.R. 560 (Bankr. W.D. Va. 2000).  <u>Tultex</u>, which was decided in 2000, addresses the question of when and how a lien attaches for non-PSC personal property taxes.  The <u>Tultex</u> court analyzed § 58.1-3340 of the Virginia Code ("§3340"), a statute applicable to non-PSC real estate taxes, and § 58.1-3942 of the Virginia Code ("§ 3942"), a statute applicable to non-PSC personal property taxes. The <u>Tultex</u> court concluded that although a lien attaches for real estate taxes, under § 3340, upon tax assessment; a lien does not attach for personal property taxes, under § 3942, until the taxing authority has distrained the taxed property.

Savage further argued that <u>Tultex</u>'s holding, that a lien attaches for personal property taxes only upon distraint, applied to PSC taxes.  Savage maintained that Fairfax County never distrained Teligent's property.[5]  Accordingly, Savage argued that

---

[5] Although Savage made this argument, Savage did not come forward at trial with any evidence showing that no distraint had occurred.  Accordingly, the Bankruptcy Court alternatively held that even if distraint were necessary, Savage would not have sustained its burden to prove distraint did not occur.

On appeal, Savage asks this Court to take judicial notice of certain documents that Savage argues will establish that Fairfax County did not distrain, and could not have distrained, Teligent's property prior to Teligent's payment of the taxes. Fairfax County argues in response that these documents are inappropriate for judicial notice.  The Court need not reach this

Teligent's payments to Fairfax County were on account of a unsecured debt, and were not preferential.

Following trial, Judge Bernstein issued an opinion finding against Savage, and in favor of Fairfax County.  The Bankruptcy Court agreed with Fairfax County that, pursuant to § 2612, Fairfax County acquired a lien on Teligent's personal property upon assessment of the taxes.  The Bankruptcy Court concluded that Savage had failed to sustain its burden of proof to show that the payments were unsecured and preferential.

    F.  <u>Appeal</u>

On May 16, 2006, Savage appealed the Bankruptcy Court's decision to this Court, again arguing that because Fairfax County never distrained Teligent's property, the taxes constituted an unsecured debt, payment of which was preferential.

The Court now considers the merits of Savage's appeal.

II.  <u>Analysis</u>

    A.  <u>Standard of Review</u>

A district court reviews for clear error a bankruptcy judge's findings of facts, Fed. R. Bankr. P. 8013, and <u>de novo</u> a bankruptcy judge's conclusions of law, <u>Jacobowitz v. Cadle Company (In re Jacobowitz)</u>, 309 B.R. 429, 435 (S.D.N.Y. 2004). On appeal, a district court "may affirm, modify, or reverse a

---

question, however, because it agrees with the Bankruptcy Court that distraint is not necessary, and that a PSC personal property tax lien arises upon tax assessment.

bankruptcy judge's judgment, order, or decree, or remand with instructions for further proceedings."  Fed. R. Bankr. P. 8013.

    B.  <u>Applicable Legal Standards</u>

        1.  <u>Preference Action</u>

Pursuant to § 547(b), a trustee may avoid and recover "any transfer of an interest of the debtor in property" made (1) to a creditor; (2) on account of an antecedent debt owed by the debtor before the transfer was made; (3) while the debtor was insolvent; (4) within ninety days before the debtor filed for bankruptcy; and (5) that enabled the creditor to receive more than it would have received had the debtor filed for chapter 7 bankruptcy, and the creditor received payment pursuant to the provisions of chapter 7.  <u>See</u> 11 U.S.C. § 547(b).  The bankruptcy trustee plaintiff bears the burden of proving all five elements of § 547(b) by a preponderance of the evidence.  <u>See, e.g.</u>, <u>Batlan v. TransAmerica Commercial Finance Corp. (In re Smith's Home Furnishings, Inc.)</u>, 265 F.3d 959, 966-67 (9th Cir. 2001) (internal citations omitted).

The parties agree that Teligent's payments to Fairfax County satisfy the first four elements of this test.  The only issue before the Court is whether the payments satisfy the fifth element, namely, whether Fairfax County received more from Teligent as a result of the payments than it would have received had Teligent filed for chapter 7 bankruptcy, and Fairfax County

9

received payment pursuant to the provisions of that chapter.

      2.  <u>Secured Debts</u>

A general rule in preference actions, which derives from the fifth element of the § 547(b) test, is that payments on account of secured debts are not preferential.  <u>See, e.g.</u>, <u>Buchwald Capital Advisors, L.L.C. v. Metl-Span I., Ltd. (In re Pameco Corp.)</u>, 356 B.R. 327, 336 (Bankr. S.D.N.Y. 2006).  In a chapter 7 liquidation, fully secured creditors receive payment up to the full value of their collateral.  <u>Id.</u>  Thus, a payment to a fully secured creditor, by definition, does not result in a payment that is greater than what the creditor would have received in a chapter 7 bankruptcy.  <u>Ray v. City Bank & Trust Co. (In re C-L Cartage Co.</u>), 899 F.2d 1490, 1493 (6th Cir. 1990).

  Once a creditor raises the argument that an allegedly preferential payment was on account of a secured debt, the bankruptcy trustee plaintiff becomes required – because of the allocation of the burden of proof – to prove a negative, that is, to show by a preponderance of the evidence that the debt was not secured.  <u>See, e.g.</u>, <u>Batlan</u>, 265 F.3d at 966-67.

      3.  <u>The Virginia Tax Code and Attachment of Liens</u>

The parties agree that, under Virginia law, a tax debt is secured by the attachment of a tax lien.  The details of how and when such tax liens arise are set by statute; different statutes address different taxes.  <u>See, e.g.</u>, VA. CODE ANN. §§ 58.1-2612;

58.1-3340; 58.1-3942 (2009).

For PSCs, the imposition of tax liens, for both real estate and personal property taxes, is governed by § 2612 of the Virginia Code.  Section 2612 states, "[a]ll the taxes and levies provided for in this chapter shall, until paid, be a lien upon the property within the Commonwealth of the corporation owning the same and take precedence over all other liens and encumbrances."  VA. CODE. ANN. § 58.1-2612 (2009).

C.  Application

The fundamental issue in this case is whether the payments made by Teligent to Fairfax County during the preference period were on account of a secured or an unsecured debt.  In order to resolve this question, the Court must consider a secondary question, apparently never addressed by the state courts of Virginia: whether, under Virginia law, a PSC personal property tax lien attaches upon assessment of the taxes, or only upon distraint of the taxed property.

In answering this question, the Bankruptcy Court focused on the language of § 2612, and concluded that a PSC personal property tax lien attaches upon tax assessment.  On appeal, Savage argues, as it did before the Bankruptcy Court, that for personal property taxes, whether in the PSC or non-PSC context, a lien attaches only when the taxed property has been distrained.

After a thorough review of the parties' arguments and the

11

applicable law, the Court concludes that a PSC personal property tax lien attaches upon tax assessment.  The Court affirms the Bankruptcy Court's decision dismissing Savage's Complaint.

    1.  <u>Section 2612</u>

The Court begins its analysis of when a PSC personal property tax lien attaches with the most directly applicable statutory language, § 2612.  Section 2612 states that PSC taxes "shall, until paid, be a lien upon" the taxed property.  This language asserts no limitations or qualifications on how or when such a lien arises.  Section 2612 strongly suggests, then, that PSC personal property taxes constitute a lien on the property assessed from the moment the taxes come into existence, that is, from the moment they are assessed.

    2.  <u>Distraint</u>

Despite the plain language of § 2612, however, Savage argues that the Court should find that distraint is necessary for a PSC personal property tax lien to attach.  Savage bases this argument almost entirely on the decision in <u>Tultex</u>.[6]  Specifically, Savage argues that the <u>Tultex</u> court engaged in a lengthy analysis of the PSC tax code, and concluded that liens for personal property do not attach until property has been distrained.

Savage is patently incorrect in arguing that the <u>Tultex</u>

---

[6] The Court highlights that the <u>Tultex</u> decision, though persuasive, is not binding on this Court.

court analyzed, or even referenced, the PSC tax code in its
decision.  The corporation in <u>Tultex</u> was not a PSC, and the two
statutes analyzed by the Tultex court, § 3340 and § 3942, apply
only to local taxes, not to taxes, such as PSC taxes, that are
administered by state agencies.[7]  The <u>Tultex</u> court held only that
<u>non-PSC</u> personal property tax liens require distraint, because
the statute governing such liens, § 3942[8], stated that taxes

---

[7] The Virginia Code addresses in entirely separate subtitles
local taxes, such as non-PSC real estate and personal property
taxes; and those taxes, such as PSC taxes, that are not local,
and instead administered by state agencies.  Sections 3340 and
3942 are contained within the subtitle addressing local taxes;
section 2612 is contained within the subtitle addressing taxes
administered by other agencies.
    Savage makes the additional argument that because the
Bankruptcy Court ruled that PSC taxes are local taxes, the
provisions of § 3340 and § 3942 should directly apply to the
taxes in this case.
    Savage's argument is without merit.  First, the Bankruptcy
Court did not rule that the PSC taxes were local taxes; rather,
it held that it was unable to find, as a matter of law, that
Fairfax County was entitled to sovereign immunity.  Second, even
if the Bankruptcy Court had so held, this Court would reverse
that decision.  The Virginia legislature, and not this Court,
decides which taxes are local taxes.

[8] In relevant part, at the time of the <u>Tultex</u> decision, §
3942 read: "[t]axes specifically assessed either per item or in
bulk against the goods and chattels distrained shall have
priority over all security interests."  VA. CODE ANN. § 58.1-3942
(2000).
    Section 3942 has been amended since <u>Tultex</u> was decided.  It
now reads, in relevant part, "[t]axes specifically assessed
either per item or in bulk against goods and chattels shall
constitute a lien against the property so assessed and shall have
priority over all security interests."  VA. CODE ANN. § 58.1-3942
(2009).  Fairfax County argues that the section was amended in
order to make clear that the <u>Tultex</u> court erred in its decision,
and that distraint is never required for a personal property tax
lien to attach.  Savage maintains that the section still requires

13

assessed on "goods and chattels <u>distrained</u>" constituted a first priority security interest.  In contrast, the Tultex court found that non-PSC real estate tax liens did not require distraint, because the statute governing those liens, § 3340[9], did not mention distraint.  Here, § 2612, the statute addressing liens for PSC taxes, similarly makes no mention of distraint.  Even according to the logic of <u>Tultex</u>, then, distraint is not required for a PSC personal property tax lien to attach.

For these reasons, the Court finds Savage's arguments about the requirement of distraint unconvincing.[10]  The Court agrees

---

distraint, but that, in any event, the amendment does not apply to the instant case, because it became effective on April 4, 2001, after Teligent's first payment in the case was made.

Because the Court finds that the requirements for a lien to attach under § 3942, whatever they may be, are not determinative of the requirements for a lien to attach under § 2612, the Court need not reach the questions of whether § 3942, as amended, applies to the instant case, or whether § 3942, as amended, requires distraint.

[9] In relevant part, § 3340 reads: "[t]here shall be a lien on real estate for the payment of taxes and levies assessed thereon prior to any other lien or encumbrance.  The lien shall continue to be such prior lien until actual payment shall have been made to the proper officer of the taxing authority."  VA. CODE ANN. § 58.1-3340 (2009).

[10]  As a final point on the issue of when a PSC tax lien attaches, the Court notes that Savage also makes reference in its brief to § 58.1-2021 of the Virginia Code ("§ 2021"), which describes the procedure for filing a memorandum of lien once PSC taxes have been delinquent for more than thirty days.

Savage states that it cites this section merely to point out that Fairfax County introduced no proof that it had filed a memorandum of lien.  Savage does not go so far as to suggest that the section actually governs when and how a lien attaches.  To the extent, however, that Savage intends to <u>imply</u> that this

with the Bankruptcy Court that Fairfax County acquired a lien on Teligent's property when the taxes in question were assessed.

### 3.   Other Arguments on Appeal

In its statement of issues presented on appeal, Savage asserts two additional arguments, which it fails to brief in any significant detail.  Savage asserts (1) that even if PSC personal property tax liens arise upon tax assessment, assessment in this case occurred during the preference period, making any lien arising therefrom avoidable; and (2) that the Bankruptcy Court erred in "finding that [Fairfax County] need not carry its burden of proof," pursuant to § 547(c).  The Court addresses these two arguments briefly here, and finds each to be without merit.

First, Savage argues that the assessment of Teligent's 2000 PSC personal property taxes took place during the preference period, making any lien arising therefrom avoidable.  Savage cites no fact, and makes no further argument, to support this

---

section governs when a lien attaches, the Court finds the argument unconvincing.

This issue has not been well briefed for the Court. Nonetheless, it appears that § 2021 addresses <u>not</u> how a PSC lien arises, but rather how the State Corporation Commission may collect on a pre-existing lien.  <u>See</u> VA. CODE ANN. § 58.1-2021 (2009).

In a similar vein, Savage also cites a 1990 regulation by the Department of Taxation, PD 90-72, which Savage argues supports its argument that personal property must be distrained before a tax lien will attach.  PD 90-72 is inapplicable to the instant case, as it addresses only those taxes assessed by the Department of Taxation, not taxes assessed by the State Corporation Commission.

bold contention.  Rather, all facts and law on the record suggest
that Savage is incorrect.  Section 58.1-1 of the Virginia Code
states that taxes are deemed assessed on January 1 of each tax
year, making the assessment date in this case January 1, 2000 –
well before the beginning of the preference period on February
20, 2001.

Second, Savage argues that the Bankruptcy Court erred in not
assigning to Fairfax County the burden of proof for its defense
under § 547(c).  Savage's argument misapprehends the analysis
conducted by the Bankruptcy Court, and the arguments asserted by
Fairfax County.  Savage is correct that if a defendant in a
preference action asserts a defense pursuant to § 547(c), that
defendant bears the burden of proof in establishing the defense.
Here, however, Fairfax County asserted that Teligent's tax debt
was secured, <u>not</u> as a defense, pursuant to § 547(c), but rather
as a negation of one of the elements of a preference action,
pursuant to § 547(b).  As already noted, a trustee plaintiff
bears the burden of proof in establishing each element of §
547(b).  The Bankruptcy Court therefore did not err in its
allocation of the burden of proof.

D.  <u>Conclusion</u>

For the reasons stated above, the Court finds that Fairfax
County acquired a tax lien on Teligent's personal property upon
assessment of Teligent's 2000 PSC personal property taxes.  These

16

taxes were assessed on January 1, 2000, a date well before the

first of Teligent's payments to Fairfax County were made.

Teligent's payments to Fairfax County were accordingly on account

of a secured debt, and not preferential, pursuant to § 547(b).

III.   Conclusion

For the reasons stated above, the Court AFFIRMS the decision

of the Bankruptcy Court.   The Clerk of the Court is directed to

close the case; any pending motions are moot.

SO ORDERED.

Dated:     New York, New York
           July 16, 2009

_(signature)_

KIMBA M. WOOD
United States District Judge

17